IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN ANTHONY CASTRO | ) | |
| 12 Park Place | ) | |
| Mansfield, TX 76063 | ) | |
| Tel. (202) 792-6600 | ) | |
| Plaintiff, | ) | Case: 1:22–cv–00369 JURY DEMAND |
| | ) | Assigned To : Cooper, Christopher R. |
| | ) | Assign. Date : 2/11/2022 |
| *vs.* | ) | Description: Pro Se Gen. Civ. (F-DECK) |
| | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION | ) | |
| 1050 First Street, NE | ) | |
| Washington, DC 20463, | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

TO THE HONORABLE COURT:

Plaintiff, JOHN ANTHONY CASTRO, appearing *pro se*, files this Complaint against the Federal Election Commission ("Commission") and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action under the Federal Election Campaign Act (the "Act"), 52 U.S.C. § 30109, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, for unlawful agency delay against the Commission.

2. Plaintiff seeks declaratory and injunctive relief to compel the Commission to declare Donald J. Trump a "candidate" for the Presidency of the United States under 52 U.S.C. § 30101(2)(B) and 31 C.F.R. §§ 100.72(b)(2)-(5) and

RECEIVED

FEB 11 2022

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

100.131(b)(2)-(5), to compel Donald J. Trump to file FEC Form 2, and to block the Commission's acceptance of FEC Form 2 pursuant to Section 3 of the 14th Amendment for Donald J. Trump's involvement in the January 6 Insurrection.

3.      Plaintiff demands that the Commission use its enforcement authority to compel full compliance by Donald J. Trump under the Act, including filing FEC Form 2.

4.      Plaintiff demands that the Commission deny the acceptance of Donald J. Trump's FEC Form 2 pursuant to Section 3 of the 14th Amendment for Donald J. Trump's involvement in the January 6 Insurrection.

5.      Plaintiff demands that the Commission opens an investigation into Donald J. Trump's campaign finances for numerous blatant violations.

## JURISDICTION & VENUE

6.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A) and 5 U.S.C. § 702.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.      Venue is proper in this district under 52 U.S.C. 30109(a)(8)(A), 5 U.S.C. § 703, and 28 U.S.C. § 1391(e)(1)(B).

## PARTIES

8.      John Anthony Castro is a U.S. Citizen and Republican primary presidential candidate (Candidate FEC ID Number P40007320) for the 2024 Presidential Election.

9.    Defendant is Federal Election Commission of the United States of America.

**PLAINTIFF'S STANDING TO BRING SUIT**

10.    A fellow primary candidate, whose injury would be competitive injury in the form of a diminution of votes and fundraising, has federal judicial standing to sue a candidate he or she believes is ineligible to hold office. *See Fulani v. League*, 882 F.2d 621 (2d Cir. 1989).  Allowing Donald J. Trump to continue being perceived as an eligible candidate in violation of Section 3 of the 14th Amendment of the United States Constitution is an illegal act that bestows a competitive advantage in the same Republican primary in which Plaintiff competes with Donald J. Trump.  *See Citizens for Resp. & Ethics in Washington v. Trump*, 939 F.3d 131, 143 (2d Cir. 2019).

11.    Plaintiff mailed an administrative complaint with the Commission on or about October 8, 2021, alleging that Donald J. Trump's consent to permit others to raise funds on his behalf to amass funds in anticipation of an inevitable candidacy required the Commission to declare him a candidate who must file FEC Form 2, Statement of Candidacy, and fully comply with federal and state campaign finance laws.  Plaintiff electronically mailed a supplementary complaint on February 10, 2022, that incorporated all of the facts outlined in this complaint.

12.    The Federal Election Commission has failed to act within the prescribed 120-day period; therefore, Plaintiff is entitled to seek judicial action in the United States District Court for the District of Colombia pursuant to 52 U.S.C.

§ 30109(a)(8).

RELEVANT LAW & LEGAL ANALYSIS

**Donald J. Trump's Deemed Candidacy**

13.     52 U.S.C. § 30101(10) defines the term "Commission" as the "Federal Election Commission."

14.     52 U.S.C. § 30101(2)(B) creates a deemed candidacy rule for anyone who gives consent to another to raise $5,000.00 or more.

15.     11 C.F.R. § 100.72(a) permits an individual to engage in passive activities of an exploratory nature that constitute "testing the waters." Such activities can include conducting polls, making telephone calls, and traveling to meet with prospective donors. *See* 11 C.F.R. §§ 100.72(a), 100.131(a).

16.     11 C.F.R. §§ 100.72(b)(1)-(5) and 100.131(b) set forth activities that indicate that an individual has decided to become a candidate and, therefore, do not enjoy the "testing the waters" designation under subsection (a). Activities that raise to such standard occur, by way of illustration only, and not by way of limitation when, "[t]he individual raises funds in excess of what could reasonably be expected to be used for exploratory activities or undertakes activities designed to amass campaign funds that would be spent after he or she becomes a candidate, [t]he individual makes or authorizes written or oral statements that refer to him or her as a candidate for a particular office[,] [t]he individual conducts activities in close proximity to the election or over a protracted period of time[,] [t]he individual has taken action to qualify for the ballot under State law." *See* 11 C.F.R.

§ 110.72(b)(2)-(5); 100.131(b)(2)-(5).

17.     Under 52 U.S.C. § 30102(e), "each candidate for federal office…shall designate in writing a political committee…to serve as the principal campaign committee of such candidate."

18.     Under 52 U.S.C. § 30104, a candidate is required to adhere to campaign finance laws, including, but not limited to, the reporting requirements.

19.     52 U.S.C. § 30107(a)(6) grants the Commission the power to initiate a civil enforcement action to compel compliance.

20.     Pursuant to 11 C.F.R. § 100.3(a)(3), the Commission shall send any deemed candidate a written notification that such person engaged in activities that established such person as a candidate.

### Donald J. Trump's Ineligibility to Hold Office

21.     Article II, Section 1 of the United States Constitution states that any person who enters the Office of the President of the United States of America shall take the following Oath or Affirmation: "I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my ability, preserve, protect and defend the Constitution of the United States."

22.     Since the founding of our nation, those who assume civil or military positions under federal or state law are required to take an oath and thereby state that they will defend the Constitution of the United States against all enemies, foreign and *domestic*.

23.     Taking the side of a foreign enemy is covered by the Treason Clause

in Article III, Section 3, Clause 1 of the United States Constitution. It states: "Treason against the United States, shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid *and* Comfort."

24.     The Anti-Insurrection Qualification Clause in Section 3 of the 14th Amendment of the United States Constitution covers taking the side of a *domestic* enemy.

## Anti-Insurrection Qualification Clause

25.     Section 3 of the 14th Amendment of the United States Constitution is best described as the Anti-Insurrection Qualification Clause. It establishes that, in order to be eligible to hold any office in the United States, a person must have never violated an Oath of Office, which always includes a pledge to support the United States Constitution.

26.     The Anti-Insurrection Qualification Clause in Section 3 of the 14th Amendment of the United States Constitution states that "[n]o person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have *engaged in* insurrection or rebellion against the same, or given *aid or comfort* to the enemies thereof. But Congress may by a vote of two-thirds of *each* House, remove such disability."

## Amendment XIV, Section 3, Clause 1

27.     Clause 1 of Section 3 of the 14th Amendment of the United States Constitution reads: "No person shall... hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath... to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof."

28.     The word "engaged" for the purpose of Section 3 of the 14th Amendment "implies, and was intended to imply, a voluntary effort to assist the Insurrection... And further, the... action must spring from [a] want of sympathy with the insurrectionary movement." *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).

29.     As the U.S. Supreme Court has articulated, "[w]ithout a statutory definition, [one must] turn to the phrase's plain meaning." *See Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020) (thereafter referencing Merriam-Webster's Collegiate Dictionary for the plain meaning of a term).

30.     Merriam-Webster's Dictionary defines an "insurrection" to be "an act or instance of revolting against civil authority or an established government." An instance is "a step, stage, or situation viewed as part of a process or series of events." Participation in the early stages of late stages of an event constitute "an instance." Of the term "revolting," Merriam-Webster says "to renounce... subjection." Renounce is to "refuse to follow, obey, or recognize." Subjection is being "placed under authority." Thus, an insurrection include all stages of the

event wherein at *at least one stage* there was a refusal to recognize the authority of an established governmental body, such as the United States Senate and its ceremonial reading of the certified election results and engaging in violence to undermine *both* the process and the United States Constitution.

31.   Donald J. Trump summoned the mob to our nation's Capitol, organized and assembled the mob, radicalized the mob with incendiary rhetoric, and ordered them to march to the Capitol.  All of these instances formed the early stages of the January 6 Insurrection in which Donald J. Trump was directly and irrefutably involved.

32.   Clause 1 of Section 3 of the 14th Amendment to the United States Constitution declares that anyone deemed to have engaged in insurrection are "enemies." However, less focus is given to the fact that Section 3 similarly disqualifies those who have given "aid or comfort" to insurrectionists.

33.   "Aid or comfort may be given to an enemy by words of encouragement, or the expression of an opinion, from one occupying an influential position." *McKee v. Young*, 2 Bart. El. Cas. 422 (1868).

34.   There is a distinction between domestic "aid or comfort" to insurrectionists and foreign "aid and comfort" to invaders. This was highlighted by President Andrew Johnson's comments to a New Hampshire delegation that "Treason is a crime and must be punished as a crime... It must not be excused as an unsuccessful rebellion." *See* J.G. Randall, *The Civil War and Reconstruction 707* (1937) (first omission in original). It was later reasoned that if "insurrection

and levying war was accepted as treason, hundreds of thousands of men, most of them youths, were guilty of the offense that carried a mandatory sentence of death by hanging." *See* Jonathan Truman Dorris, *Pardon and Amnesty Under Lincoln and Johnson – The Restoration of the Confederates to Their Rights and Privileges 1861-1898*, at 4 (1953). "To the Congress, the old law was unworkable for the [Civil War]... [thus, on] July 31, 1861, Congress passed a law which provided that anyone found guilty of conspiracy to overthrow the United States Government or to interfere with the operation of its laws shall be guilty of a high crime." *See* C. Ellen Connally, *The Use of the Fourteenth Amendment by Salmon P. Chase in the Trial of Jefferson Davis*, 42 Akron L. Rev. 1165, 1165 (2009)."

35.   "The offenses for which exclusion from office is denounced are not merely engaging in insurrection... but the giving of aid or comfort to their enemies. They are offenses not only of civil but of foreign war." *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869). In that case, Judge Chase, whom himself was balancing his need for impartiality with his desire to pursue the Presidency, insinuated that the inclusion of the "aid or comfort" disqualifier in Section 3 of the 14th Amendment applied only in the context of a foreign invasion or war. Judge Chase was an abolitionist but still a politician who considered campaigning for the Presidency and did not want to upset the South by declaring that the reference in Section 3 to "enemies" applied to the insurrectionists and rebels that fought for the Confederacy. Giving "aid and comfort" to foreign enemies was already covered by the Treason Clause in Article III, Section 3, Clause 1 of the United States

Constitution. Section 3 of the 14th Amendment, being a post-civil war amendment, was referring solely to *domestic* enemies that engaged in insurrection or rebellion against the United States and had previously given an oath to support the Constitution; thereby only targeting higher-level officials that are required to take oaths.

36.    This is supported by the fact that the "final version of Section 3 reflected a refinement of the radicals' philosophy of formal equality. Opposition to the broader House proposal arose in part from the widespread view that many Confederate soldiers, even if not conscripted, had little real choice but to join the Southern cause. In that light, the final version of Section 3 was not less punitive so much as it was more targeted. Whereas the House version promised to affect the rank and file, the Senate version would reach only the senior leadership. Moreover, the Senate version was in important ways harsher than the House version. The House measure would have sunset in 1870 and applied only to federal elections. By contrast, the final version [of Section 3] permanently rendered virtually the entire political leadership of the South ineligible for office, both state and federal. The final version of Section 3 thus reflected a nuanced view: as compared with felons, Confederate officials were more deserving of punishment and Southern foot soldiers were less so." *See* Richard M. Re, Christopher M. Re, *Voting and Vice: Criminal Disenfranchisement and the Reconstruction Amendments*, 121 Yale L.J. 1584, 1622–23 (2012); *also see* Eric Foner, *Reconstruction: America's Unfinished Revolution 1863-1877*, at 259 (1988).

37.     Every federal, state, and local public official that offered words of encouragement, show of sympathy, or expression of support for or defense of, the January 6 Insurrection must, pursuant to Section 3 of the 14th Amendment to the United States Constitution, be declared ineligible to hold any civil or military office in the United States at the federal, state, or local level.

38.     Because the federal judiciary only recognizes fellow candidates as having the right to bring disqualification lawsuits in federal courts, I call on Congress to pass enabling legislation to create a private right of action for American voters to challenge qualifications of candidates for public office solely with regard to the words and conduct related to the January 6 Insurrection.

39.     Donald J. Trump is not the only public official ineligible to hold public office under Section 3 of the 14th Amendment. Soon-to-be Defendants whose Plaintiffs will be primary challengers with judicial standing to sue will include, but most *certainly* will not be limited to, Congressmembers Marjorie Taylor Greene (R-Ga.), Mo Brooks (R-Ala.), Lauren Boebert (R-Colo.), Madison Cawthorn (R-NC), Louie Gohmert (R-Texas), Paul Gosar (R-Ariz.), and Andy Biggs (R-Ariz.) for giving "aid or comfort" to insurrectionists.

## Amendment XIV, Section 3, Clause 2

40.     Clause 2 of Section 3 of the 14th Amendment to the United States Constitution reads: "Congress may, by a vote of two-third of _each_ House, remove such disability." (*Emphasis added*).

41.     Plaintiff emphasizes the Constitution's use of the term "each" since

there appears to be widespread misconception that only the U.S. House of Representatives is needed to remove the disqualifying disability, which stems from the 1868 case of *Butler*. *See Butler*, 2 Bart. El. Cas. 461 (1868). Therefore, if 290 members of the U.S. House of Representatives and 67 members of the U.S. Senate vote to remove the disqualifying disability, a person otherwise ineligible to hold office under Section 3 of the 14th Amendment could hold office. In today's political climate, this is impossible.

42.     It is also critical to anticipatorily highlight that a Presidential pardon does not remove this disability since the United States Constitution provides that only Congress may lift the disability. This is contrary to an old, outdated, and clearly biased Attorney General Opinion from Southern Confederate Augustus Garland that attempted to limit its scope; it inexplicably ignored the term "each" and suggested a presidential pardon could remove the qualification disability notwithstanding the Constitution's clear and exclusive reservation and delegation of that power solely to Congress. *See Lawton's Case*, 18 Op.Atty.Gen. 149 (1885).

### Scope of Amendment XIV

43.     The disqualification applies to both civil and military positions at both the federal and state level, which has been judicially determined to even include a local constable position. *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).

44.     "There can be no office which is not either legislative, judicial, or

executive [covered by Section 3 of the 14th Amendment because]... it embraces every office... [and] it was passed to punish those high in authority... for their bad faith toward the government they had sworn [in their oath of office] to support." *Id*.

45.     "The amendment applies to all the states of the Union, to all offices under the United States or under any state, and to all persons in the category of prohibition, and for all time present and future." *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869).  It is a lifetime ban from public office.

46.     As mentioned before, Section 3 of the 14th Amendment is merely an Anti-Insurrection Qualification Clause. It was not intended to be a punishment for someone who engaged in an insurrection or gave aid or comfort to insurrectionists any more than the Natural Born Citizen qualification clause is punitive. If you are not a natural born citizen of the United States, you cannot hold the Office of the Presidency. If you violated your oath of office by engaging in an insurrection, you cannot hold the Office of the Presidency. It's a mere qualification for the office.

## Enforcement of Amendment XIV

47.     In an attempt to neutralize Section 3 of the 14th Amendment, some commentators dating as far back as 1868 developed the legal theory that this provision of the United States Constitution was unenforceable without enabling legislation. Such a suggestion is ludicrous, frivolous, without merit, and disrespectful to the United States Constitution.

48.    In fact, it was the President of the Confederacy, Jefferson Davis, who, in 1868, contended that Section 3 was self-executing and, therefore, barred his criminal trial for treason. *See Gerard N. Magliocca, Amnesty and Section Three of the Fourteenth Amendment*, 36 Const. Comment. 87 (2021). Moreover, it was Judge Chase who agreed in Jefferson Davis' criminal trial that Section 3 was self-executing; thereby, in a flawed theory, implicating the prohibition against Double Jeopardy. *See Case of Davis*, 7 F. Cas. 63, 90, 92-94, (C.C.D. Va. 1867) (No. 3,621a) (describing Davis' argument and the Government's response); *Id.* at 102 (noting the Chief Justice's view). Shortly thereafter, however, Justice Chase reversed his position and declared that Section 3 was not self-executing when a black criminal defendant challenged his conviction on the grounds that the judge presiding over his trial fought for the Confederacy and was, therefore, ineligible to preside over his trial rendering his guilty verdict null and void. *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869) (No. 5,815). Following these irreconcilable rulings from a clearly biased Justice Chase who could not make up his mind, Congress decided to act on its own by enacting Section 3 enforcement statutes and, shortly thereafter, federal prosecutors began bringing actions to oust ineligible officials, including half of the Tennessee Supreme Court. *See Act of May 31*, 1870 (First Ku Klux Klan Act), ch. 114, § 14, 16 Stat. 140, 143; id. at § 15 (imposing criminal penalties for knowing Section Three violations); Sam D. Elliott, When the United States Attorney Sued to Remove Half the Tennessee Supreme Court: The Quo Warranto Cases of 1870, 49 Tenn B.J. 20 (2013). Congress' enactment of legislation was not an admission

that Section 3 was not self-executing; it was to avoid the lunacy of a clearly biased, conflicted, and politically active Chief Justice that could not perform the functions of his office in a neutral, intellectual, fair, and impartial manner.

49.     In 1871, Amos Powell was indicted, via an enabling statute making it a *crime* to knowingly violate Section 3 of the 14th Amendment, "for accepting the office of sheriff when disqualified from holding office by the 14th Amendment... [and the] indictment charged that the defendant knowingly accepted office under the state of North Carolina, to which he was ineligible under the provisions of the 3d section of the 14th Amendment." *See U.S. v. Powell*, 65 N.C. 709 (C.C.D.N.C. 1871).  In other words, to attach criminal penalties, enabling legislation is absolutely required since Section 3 of the 14th Amendment makes no reference to criminal penalties.

50.     Congress certainly has jurisdiction to expel or exclude its own members that it determines have violated Section 3 of the 14th Amendment. *See Powell v. McCormack*, 395 U.S. 486 (1969).   However, it is unclear whether Congress can unilaterally impose said disability on the Executive Branch since that could be deemed an encroachment on a separate branch of the federal government. Nevertheless, a Congressional finding of liability would certainly aid the federal judiciary's fact-finding mission.

51.     Historically, the neutral finder of fact and arbiter of law has been the federal judiciary. Consistent with our principles of federalism and separation of powers, it is more likely that the federal judiciary and, in particular, the United

States Supreme Court would be the only authority that the drafters of Section 3 could have possibly envisioned as being the most competent and legitimate body to determine whether an individual is ineligible under the Anti-Insurrection Qualification Clause.

**FACTUAL ALLEGATIONS**

**Donald J. Trump's Candidacy in the 2024 Elections**

52.    Mr. Trump's website, www.donaldjtrump.com, directs all contributions to the Save America JFC, a joint fundraising committee of Save America and Make America Great Again PACs (herein "Trump Junta Committees").

53.    Although the website purports that any contributions are "not authorized by any candidate or candidate's committee," its presence on Mr. Trump's personal campaign website clearly establishes that Mr. Trump has given his "consent" to the Trump Junta Committees to raise and expend funds on his behalf thus making him a statutorily determined deemed candidate. *See* 52 U.S.C. § 30101(2)(B).

54.    Mr. Trump's Trump Junta Committees raised over one-hundred million dollars ($100,000,000.00) in the calendar year 2021, which is well "in excess of what could reasonably be expected to be used for exploratory activities." *See* 11 C.F.R. §§ 100.72(b)(2), 100.131(b)(2).

55.    Mr. Trump has undertaken the activity of aggressively fundraising, which are "activities designed to amass campaign funds that would be spent after

he… becomes a candidate." *See* 11 C.F.R. §§ 100.72(b)(2), 100.131(b)(2).

56.     Mr. Trump referred to himself as the "45th and 47th" President of the United States in a video that was made publicly available, viewed by millions of Americans and people around the world, and referenced in numerous national news outlets, foreign news outlets, and even on late-night shows like Jimmy Kimmel Live. This was indisputably an "oral statement[] that refer[s] to him[self]… as a candidate" for the nomination of the Republican Party for the Presidency of the United States. *See* 11 C.F.R. §§ 100.72(b)(3), 100.131(b)(3).

57.     Mr. Trump has continued and plans to continue holding public rallies, which is indisputably "conduct[]… over a protracted period of time" that establishes himself as a candidate for the nomination of the Republican Party for the Presidency of the United States. *See* 11 C.F.R. §§ 100.72(b)(4), 100.131(b)(4).

58.     Mr. Trump, fearing that the House Select Committee to Investigate the January 6th Attack on the United States Capitol will find evidence that he "engaged in insurrection" and thereby render him ineligible and unqualified to hold office, has obstructed the investigation by pressuring witnesses to assert executive privilege, and promising pardons to those currently facing federal criminal prosecution for directly engaging in the insurrection and attack on the Capitol. Because Section 3 of the 14th Amendment is a qualification requirement under both federal and state law, Mr. Trump's actions to obstruct the investigation are "action[s] to qualify for the ballot under State law." *See* 11 C.F.R. §§ 100.72(b)(5), 100.131(b)(5).

## Donald J. Trump's Role in the

## January 6 Insurrection

59.     On January 6, 2021, as insurrectionists laid siege to the United States Capitol, Mr. Trump took no action despite being repeatedly contacted by family and friends to call off the attack; thereby impliedly ratifying the insurrection.

60.     When Mr. Trump finally spoke on the matter, speaking directly to the insurrectionists, he said "we love you, you're very special." These were words of encouragement and an irrefutable display of sympathy with the insurrectionary movement.

61.     On Saturday, January 29, 2022, a little more than one year after the January 6 Insurrection, showing absolutely no remorse, Mr. Trump publicly declared that "If I run and I win, we will treat those people from January 6 fairly... and if it requires pardons, we will give them pardons." More words of encouragement, displays of sympathy, and ratification of the insurrectionary attack on the United States Capitol.

62.     In the entire history of the United States, there has never been a President or a Presidential candidate that has publicly vowed to pardon criminals that brazenly attacked a separate branch of the federal government. And one day, it may be this Court or the United States Supreme Court that insurrectionists come looking for.

## COUNT ONE
## COMPEL THE FEDERAL ELECTION COMMISSION TO

### DEMAND FEC FORM 2, STATEMENT OF CANDIDACY, FROM
### DONALD J. TRUMP

63.     Plaintiff incorporates Paragraphs 1 through 62 as if fully set forth herein.

64.     Mr. Trump's activities go far beyond "testing the waters" as outlined under 11 C.F.R. §§ 100.72(b)(2)-(5); 100.131(b)(2)-(5).

65.     Mr. Trump has raised donations in excess of over one-hundred million dollars ($100,000,000.00) and hosts numerous rallies throughout the country. He has obstructed the House Select Committee investigation of the January 6th attack on the United States Capitol with the intent to avoid being rendered ineligible and unqualified to hold office under federal and state law.

66.     Based on all of the foregoing, it is clear and irrefutable that Mr. Trump has become a "candidate" seeking the nomination of the Republican Party to be the "47th" President of the United States as Mr. Trump has expressly referred to himself.

67.     As a deemed "candidate," Mr. Trump is legally subject to any and all campaign finance laws, including, but not limited to, the reporting requirements under 52 U.S.C. § 30104.

68.     Pursuant to 52 U.S.C. § 30102(e), as a deemed "candidate," Mr. Trump is legally required to "designate in writing a political committee… to serve as the principal campaign committee."

69.     The Commission has the duty to declare Mr. Trump a candidate for the 2024 Presidential Election, request full compliance of Mr. Trump, and request

that Mr. Trump files Form 2 "Statement of Candidacy."

## COUNT TWO
### COMPEL THE FEDERAL ELECTION TO
### BLACK ACCEPTANCE OF DONALD J. TRUMP'S FEC FORM 2

70.    Plaintiff incorporates Paragraphs 1 through 69 as if fully set forth herein.

71.    Plaintiff requests that the FEC block the acceptance of Mr. Trump's FEC Form 2 "Statement of Candidacy."

72.    Mr. Trump violated his Oath of Office when he "engaged in" the insurrection on January 6, 2021, and/or provided "aid or comfort" to the insurrectionists on *and after* January 6, 2021, and rendered himself ineligible to hold public office under Section 3 of the 14th Amendment to the United States Constitution.

73.    Mr. Trump's actions strip him of the required qualifications under Section 3 of the 14th Amendment to hold any political office in the United States. Put plainly, Mr. Trump would be ineligible to hold the office of a city councilman in Palm Beach, Florida.  He is forever banned from any and all public offices.

74.    Based on the foregoing, the Commission must block the acceptance of FEC Form 2.

## COUNT THREE
### COMPEL THE FEDERAL ELECTION COMMISSION TO
### INITIATE AN INVESTIGATION OF TRUMP'S CAMPAIGN FINANCES

75.    Plaintiff incorporates Paragraphs 1 through 74 as if fully set forth herein.

76.     Mr. Trump has raised a substantial amount of money for his political pursuit while simultaneously avoiding compliance with the Commission.

77.     Mr. Trump's actions raise concern about improper coordination between him and the Trump Junta Committees, which requires a full investigation.

78.     Plaintiff seeks a declaratory relief compelling the initiation of an investigation to determine if there were criminal violations of campaign finance laws.

### RELIEF REQUESTED

WHEREFORE, Plaintiff, JOHN ANTHONY CASTRO, requests that this Court finds that:

A.     The Commission shall declare Mr. Trump a candidate and request proper compliance from Mr. Trump, including filing FEC Form 2.

B.     Alternatively, should the Court determine that Mr. Trump has not met the regulatory criteria for being deemed to have become a candidate or on any other grounds, because the statutory definition of a candidate is clear on its face and the Act provides no exception to the definitions of contributions or expenditures for "testing the waters," Plaintiff seeks to have 11 C.F.R. § 100.72 declared invalid as a matter of law since it conflicts with the plain meaning of the statute and bestows an unlawful competitive advantage on a rival candidate. *See U.S. v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836 (2012). In other words, the "testing the waters" regulations are a regulatory fabrication of the Federal

Election Commission that conflict with the plain meaning and reading of the statute, has no statutory basis, and must be deemed invalid as a matter of law.

      C.      That the Commission cannot accept Mr. Trump's FEC Form 2 since he "engaged in" an insurrection and/or provided "aid or comfort" to the insurrectionists on and after January 6, 2021.

      D.      That the Commission has a duty to initiate an investigation as to Mr. Trump's campaign finances.

      E.      Such other and further relief that this Court deems equitable and proper.

## PRAYER

WHEREFORE, Plaintiff, JOHN ANTHONY CASTRO, respectfully prays that the Commission be cited to appear and answer, and that upon final trial hereof, that this Court awards the relief requested above, together with such other relief to which Plaintiff may be entitled.

Respectfully submitted

February 11, 2022

By

JOHN ANTHONY CASTRO
12 Park Place
Mansfield, TX 76063
Tel. (202) 792 - 6600
J.Castro@CastroAndCo.com

**PLAINTIFF *PRO SE***